Ashton E. Thomas, Esq.
1209 East Grand Street, Suite 201
Elizabeth, NJ 07201
Tel: 908-289-3640
Fax: 908-353-8889
AT 3665
Counsel for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

BOBBY JOHNSON AND EDWIN AGUAIZA,
Individually and on behalf of all others similarly
situated,

                Plaintiffs

      v.

DRAEGER SAFETY DIAGNOSTICS, INC.

              Defendant.
_____

Case No.


CLASS ACTION COMPLAINT


JURY DEMAND

      Plaintiffs Bobby Johnson, residing at 582 Valley Street, Orange, New Jersey and Edwin Aguaiza, residing at 824 Pearl Street, Elizabeth, New Jersey by and through their attorney, bring this class action complaint on their own behalf and on behalf of all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure. Defendant Draeger Safety Diagnostics, Inc. (hereinafter referred to as Draeger) has its U.S. corporate headquarters at 4040 W. Royal Lane, Suite 136, Irving, Texas. Plaintiffs complain and allege upon knowledge as to themselves and their own acts, and upon information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this class action under 28 U.S.C. 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), provides federal courts original jurisdiction over any class action in which any member of a class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5 million, exclusive of interest and costs. The plaintiffs reside in the State of New Jersey, and the Draeger is headquartered in the State of Texas. From 2005 to the present, the projected class size exceeds 250,000 parties. It is reasonable to infer that the $5 million aggregate will be met.

2. This Court has personal jurisdiction over Draeger who is registered to conduct business in New Jersey. In 1998, Draeger delivered the first Alcotest 7110 MKIII-C (hereinafter referred to as Alcotest 7110) to the New Jersey State Police. Since that time, Draeger has furnished over 480 instruments at a cost of $11,800 per unit. The $5,520,000 contract with the State of New Jersey is the largest single contract for Draeger involving evidential-breath testing instrument (hereinafter referred to as EBTs) in the United States.  Draeger intentionally avails itself of the markets within New Jersey through the promotion, sale, marketing, and distribution of its Alcotest 7110 to render the exercise of jurisdiction by this Court proper and necessary. There is a direct relationship between the contacts and the plaintiffs' cause of action.

3. New Jersey law applies to all claims set forth in this Complaint as there are sufficient minimum contacts between Draeger and the State of New Jersey. All of the instruments subject to this suit are located within the State of New Jersey. All of the tests subject to this suit were

performed in the State of New Jersey. Weighing the burdens and the benefits derived by Draeger, it is reasonable to require them to be subject to jurisdiction.

4. Venue is proper in this District under 28 U.S.C. 1391 (b) (2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District and because a substantial part of property that is subject of the action is situated in this District.

## **BACKGROUND**

5. Since 1954, (EBTs), invented by Robert F. Borkenstein, have been in use in the United States.

6. In 1995, Draeger introduced to the United States market the Alcotest 7110, which used a dual sensor measuring system consisting of infrared spectroscopy (IR) and electrochemical technology (EC). See PA 1-4.

7. In 1998 the State of New Jersey commissioned Draeger to develop Alcotest firmware to meet its needs. In 1998 Draeger delivered the first instruments with firmware version 3.8 to the New Jersey State Police.

8. From December 2000 through December 2001, New Jersey reviewed and evaluated the operation of the Alcotest 7110, NJ 3.8 in the Pennsauken Township pilot program.

9. In January 2005 police departments in Middlesex County started to use the Alcotest 7110, NJ 3.11. By December of that year thirteen of New Jersey's twenty-one counties were testing defendants with the Alcotest 7110.

10. In April and June 2006, the Alcotest 7110 was introduced into Atlantic, Cape May, Passaic, and Sussex Counties. The roll-out for the remaining four counties – Bergen, Hudson, Monmouth and Essex- ceased while the New Jersey Supreme Court considered a challenge to the

Alcotest. After the Chun decision, the roll-out became statewide. See State v. Chun, 194 N.J. 54, cert. denied, 555 U.S. 825, 129 S. Ct. 158, 172 L.Ed. 2d 41 (2008).

Whether the Alcotest 7110 contains latent design defects in that it is a piece of respiratory equipment that is not standardized at frequent intervals and there is no provision for calibration of its pulmonary reporting apparatus.

These issues were not raised or decided by Chun. As the Appellate Court in Rivas stated, "Rivas does not challenge Chun or its progeny. Instead, he seeks to open a new front against the Alcotest by suggesting that the lack of calibration of the so-called 'pulmonary variables' of the device belie its scientific reliability." (State v. Rivas, A-4857-11T2) (slip op. at 6) (unpublished, decided December 10, 2012) See PA 31-37.

## THE PARTIES

11. Plaintiff Bobby Johnson is a New Jersey resident. On the 5th day of February, 2010, Johnson was arrested for suspected drunk driving in the Township of Montclair. At the Montclair Police Department, Johnson was read New Jersey Motor Vehicle Commission Standard Statement pursuant to N.J.S.A. 39:4-50.2(e). Said statement instructed him that he was required by law to submit to the taking of samples of his breath to determine the content of alcohol in his blood. Johnson consented and was administered a breath test on the Alcotest 7110. Like all of the Alcotest 7110 devices used in the State of New Jersey, it was a piece of respiratory equipment that was not standardized at frequent intervals and there was no provision for calibration of pulmonary functions reported. For Plaintiff Johnson, the Alcotest 7110 reported a reading of 0.13% BAC. Because this evidence was admitted on a per se basis, Plaintiff Johnson entered a plea to drunk driving. Plaintiff Johnson's driving privileges were suspended for 7 months, and he

was fined $664.00.

12. Plaintiff Edwin Aguaiza is a New Jersey resident. On the 11th day of June, 2011, Aguaiza was arrested for suspected drunk driving in the City of Linden. At the Garwood Police Department, Aguaiza was read New Jersey Motor Vehicle Commission Standard Statement pursuant to N.J.S.A. 39:4-50.2(e). Said statement instructed him that he was required by law to submit to the taking of samples of his breath to determine the content of alcohol in his blood. Aguaiza consented and was administered a breath test on the Alcotest 7110. The Garwood Alcotest 7110 malfunctioned so the test was aborted. Plaintiff Aguaiza was then transported to the Westfield Police Department where he was administered a breath test on another Alcotest 7110. Like all of the Alcotest 7110 devices used in the State of New Jersey, it was a piece of respiratory equipment that was not standardized at frequent intervals and there was no provision for calibration of pulmonary functions reported. For Plaintiff Aguaiza, the Alcotest 7110 reported a reading of 0.11% BAC. Because this evidence was admitted on a per se basis, Plaintiff Aguaiza entered a plea to drunk driving. Plaintiff Aguaiza's driving privileges were suspended for 7 months, and he was fined.

13. Defendant Draeger has its U.S. corporate headquarters in the State of Texas. Draeger is authorized to do business in the State of New Jersey. At all times relevant hereto, Draeger was in the business of designing, manufacturing, distributing, advertising, marketing, promoting, and/or selling Alcotest in interstate commerce and in the State of New Jersey.

### PLAINTIFFS' CLASS ALLEGATIONS

14. Plaintiffs seek to bring this case as a statewide class action on behalf of themselves and all others similarly situated in the State of New Jersey as members of the proposed Class,

5

defined, in the alternative, as follows:

(1) All persons arrested for drunk driving within the State of New Jersey who blew into the Alcotest 7110 where a result was reported and said result was used as part of the proofs of guilt and the plaintiffs plead guilty or were convicted after trial of drunk driving pursuant to N.J.S.A. 39:4-50.

**or**

(2) All persons arrested for drunk driving within the State of New Jersey who blew into the Alcotest 7110 where a result was reported which was under the minimums necessary for a reported result and the plaintiffs plead guilty or were convicted after trial of drunk driving pursuant to N.J.S.A. 39:4-50 or of refusal to submit to chemical test pursuant to N.J.S.A. 39:4-50.4a.

15. All persons arrested in Union County for drunk driving who blew into the Alcotest 7110 where a result was reported and said result was used as part of the proofs of guilt and the plaintiffs plead guilty or were convicted after trial of drunk driving pursuant to N.J.S.A. 39:4-50 or all persons arrested in Union County for drunk driving who blew into the Alcotest 7110 where a result which was under the minimums necessary for a reported result and the plaintiffs plead guilty or were convicted after trial of drunk driving pursuant to N.J.S.A. 39:4-50 or of refusal to submit to chemical test pursuant to N.J.S.A. 39:4-50.4a will be part of a Sub Class whose representative will be Edwin Aguaiza, who will be represented by separate counsel.

16. Excluded from this Class and Sub Class are the following persons:

(1) All persons arrested for drunk driving within the State of New Jersey who blew into the Alcotest 7110 where the reading was suppressed;

(2) All persons arrested for drunk driving within the State of New Jersey who never attempted to blow into the Alcotest 7110;

(3) All persons arrested for drunk driving within the State of New Jersey who were found to be under the influence of controlled dangerous substances or prescription medication;

(4) All persons arrested for drunk driving within the State of New Jersey who gave blood samples without breath samples; and

(5) All persons arrested for drunk driving within the State of New Jersey who gave urine samples without breath samples.

## NUMEROSITY

17. The Class is so numerous that joinder of all of its members is impractical. From public records, more than 250,000 drunk driving summonses have been issued in the State of New Jersey since the introduction of the Alcotest 7110. The names and addresses of Class members can be learned by Plaintiffs, and Class members may be notified on the pendency of this action by mail supplemented (if deemed necessary or appropriate by the Court) by published notice.

## COMMON QUESTIONS OF LAW AND FACT

18. Common questions of law and fact exist as to all Class members. These questions predominate over questions affecting only individual Class members. The common legal and factual questions include but are not limited to the following:

(1). Whether the Alcotest 7110 was negligently designed;

7

(2). Whether the Alcotest 7110 was defectively designed   against the consumer's reasonable expectations because it is a piece of respiratory equipment that is not standardized at frequent intervals and there is no provision for calibration of its pulmonary reporting apparatus;

(3).Whether Draeger made misrepresentation of fact that constituted common law fraud; and

(4) Whether Draeger should be subject to punitive damages.

## TYPICALITY

19. Plaintiffs' claims are typical of the claims of the Class. Plaintiffs are typical in that they were arrested for drunk drinking within the State of New Jersey. Plaintiffs were advised pursuant to N.J.S.A. 39:4-50.2(e) that the law requires them to submit samples of their breath for testing. Plaintiffs complied with said instruction. Plaintiffs blew into the Alcotest. A result was reported which was used as part of the proofs of guilt. Plaintiffs plead guilty or were convicted after trial of a violation of drunk driving pursuant to N.J.S.A. 39:4-50.

## ADEQUACY OF REPRESENTATION

20. Plaintiffs can and will fairly and adequately represent and protect the interest of the Class and have no interests that conflict with or are antagonistic to the interest of the Class. Plaintiffs have retained counsel experienced in litigation of this nature to represent them.

## RULE 23(B) ANALYSIS

21. Class certification is appropriate under Federal Rule of Civil Procedure 23(b) (1) (B) if piecemeal litigation involving individual class members may as a practical matter produce injustice for class members who are not parties to the individual litigation. This litigation seeks

8

the settlement of one basis issue: whether the Alcotest 7110 has a latent design defect. Inconsistent rulings on this question would be prejudicial to all parties. At the same time, the first litigator should not be able to substantially affect all potential claimants.

22. Class certification is appropriate under Federal Rule of Civil Procedure 23(b) (2) if the relief sought is primarily declaratory or injunctive in nature. This litigation seeks a declaration that the Alcotest 7110 has a latent design defect. In addition, the Plaintiffs and Class members seek an injunction against the continued use of the device to prosecute persons within the State of New Jersey. Given the size of the proposed class, damages are not the driving force behind this litigation.

23. The Plaintiffs and Class members also seek Class certification under Federal Rule of Civil Procedure 23(b) (3). In this litigation, the individual circumstances leading to the arrest of the Plaintiffs or Class members are irrelevant. Therefore, the questions of law or fact common to Class members predominate over any questions affecting individual members.

24. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy. First, Class members would have no interest in individually controlling the prosecution of separate action as their arrest would not contain unique features requiring special litigation. Second, to date no civil actions have been filed in this jurisdiction for the relief sought by this Class Action. Consequently, there is no possibility that pending litigation will reach judgment before this Class Action is resolved. Third, this Class Action is filed in the jurisdiction where the Plaintiffs and Class members reside and where the evidence is concentrated. Fourth, the proposed Class Action is easily manageable. The Plantiffs and Class members seek one evidentiary hearing to determine whether Alcotest 7110 has a latent design

9

defect.

## TOLLING OF THE STATUTE OF LIMITATIONS

25. The design defect in the Alcotest 7110 are latent and self-concealing in that the pulmonary functions are walled off from the operator. Accordingly, exercising reasonable care, Plaintiffs and the Class members could not discover that such inherent defects existed.

26. By suppressing the dissemination of truthful information regarding the design defect, Draeger has actively foreclosed Plaintiffs and the Class members from learning of the latent defects.

27. By reason of the foregoing, the claims of Plaintiffs and other Class members are timely under any applicable statute of limitations (as tolled by the filing of this class action petition) pursuant to the discovery rule and the doctrine of fraudulent concealment.

28. Draeger has been aware of the defective nature of the Alcotest 7110 for several years.

29. Despite this knowledge and awareness, Draeger has continued to manufacture and sell the Alcotest 7110 with the design defect, has engaged in an ongoing scheme to hide the defective nature of the Alcotest as set forth above, and has failed to take appropriate action towards inspecting, repairing, or replacing the defectively designed   Alcotest.

30. Draeger's failure to properly test the Alcotest prior to marketing them, their failure to take necessary steps to remedy the defect, their failure to suspend sales of the Alcotest in the United States, and their refusal to inspect, repair, or replace the defective parts, in light of their knowledge that this design damaged Plaintiffs and the Class, was and is willful, wanton, malicious, outrageous, and was and continues to be undertaken in deliberate disregard of, or with

reckless indifference to, the rights and interests of Plaintiffs and the Class members.

## COUNT 1

## NEGLIGENCE

31. Paragraphs 1 through 30 are realleged and incorporated by reference.

32. The Alcotest must report four minimums for a breath sample: minimum volume of 1.5 liters, minimum blowing time of 4.5 seconds, minimum flow rate of 2.5 liters, and the IR measurement reading achieves a plateau.

33. Since breath testing always relies on the extrapolation of BAC through testing of breath, precision is critical.

34. Draeger was negligent in designing/manufacturing the Alcotest in that there is no provision to calibrate the pulmonary function reported. Moreover, the equipment is not standardized by design at frequent intervals.

35. The defect existed at the time the article left the control of the manufacturer and did not undergo substantial change.

36. The Plaintiffs and other Class members were foreseeable users or consumers, or were within the area exposed to the risk.

37. The defect was the proximate cause of the harm to Plaintiffs and other Class members who faced prosecution with tainted evidence on a per se basis.

38. Solely as a consequence of Draeger's negligent conduct, and its failure to exercise ordinary and reasonable care, the Plaintiffs have been damaged in the amount not yet determined, but which exceed jurisdictional amount and each member of the Class has been similarly damaged in amounts not yet determined, but which exceed the jurisdictional amounts

11

for each such member of the Class, exclusive of interest and costs.

## COUNT II

## STRICT TORT LIABILITY

39. Paragraphs 1 through 38 are realleged and incorporated by reference.

40. The Plaintiffs claim that the Alcotest was defectively designed in that there is no provision to calibrate the pulmonary function reported. Moreover, the equipment is not standardized by design at frequent intervals.

41. The defect existed at the time the article left the control of the manufacturer and did not undergo substantial change.

42. The Plaintiffs claim that the Alcotest did not safely perform the job or function for which it was made, contrary to the consumer's/user's reasonable expectations.

43. The Plaintiffs claim that Draeger was not reasonably careful in the manner in which it designed, marketed, and sold the Alcotest.

44. The Plaintiffs and other Class members were foreseeable users or consumers, or were within the area exposed to the risk.

45. The defect was the proximate cause of the harm to Plaintiffs and other Class members who faced prosecution with tainted evidence on a per se basis.

46. Solely as a consequence of Draeger's negligent conduct, and its failure to exercise ordinary and reasonable care, the Plaintiffs have been damaged in the amount not yet determined, but which exceed jurisdictional amount and each member of the Class has been similarly damaged in amounts not yet determined, but which exceed the jurisdictional amounts for each such member of the Class, exclusive of interest and costs.

12

## COUNT III

## COMMON LAW FRAUD

47. Paragraphs 1 through 46 are realleged and incorporated by reference.

48. On various dates between October 5, 2006 and December 12, 2006, Hansueli Ryser, Vice President of Draeger Safety Diagnostic, Inc., gave testimony as an expert witness in electrical engineering for his employer, Draeger under oath before the Honorable Michael P. King, who presided over the <u>Chun</u> Fact Finding Hearing. Since 1991, Ryser was continuously employed by Draeger.

49. Ryser graduated with a degree in electronic engineering from the Federal College of Technology in Zurich, Switzerland.   Ryser continued his education at the University of Colorado where he took courses related to quality control and quality assurance. Ryser received training at the Center for Studies of Law and Action at the University of Indiana where he was certified for supervision and expert testimony.

50. Ryser testified, "So no maintenance needed other than verifying, of course, proper operating – that it's operating properly at the time when the unit is calibrated. And after that you do not have to maintain it or it's going to stay alive without doing anything to it."  He continued that this was the conclusion of Draeger. See PA 5-6.

51. While commenting on the sampling criteria, Ryser testified, "Okay. As far as flow rate and volume are concerned, again, we have a flow sensor. We have a pressure transducer in the system that senses – that helps us to calculate that. And the timer, while that's simply a timer inside our equipment. Since we have a clock in there as well we can time things. And the slope detection is a routine within our firmware that observes the reduction of infrared energy and

13

plots this out until it can determine that infrared absorption is level." See PA 7.

52. Ryser testified that he was 100 percent convinced that the Alcotest accurately reads alcohol in human breath. See PA 8-9.

53. Ryser testified, "We all along said that breath analyzer is accurate if it's within NHTSA specifications." See PA 10-11.

54 Ryser testified that Draeger maintained quality assurance and quality control. See PA 12-13.

55. The Plaintiffs allege that the representations mentioned above were false when Ryser made them, in that he knew the Alcotest was not a calibrated scientific instrument, but that it was designed to appear to be calibrated. By walling off its pulmonary functions from the operator, Draeger made the automated control testing appear to calibrate the entire operating system, but in fact the pulmonary readings are reported randomly by the unit. Moreover, the equipment is not standardized by design at frequent intervals.

56. The Plaintiffs allege that Ryser knew that the representations about quality were false, in that the Quality Assurance Plan that Draeger filed in 2001 pursuant to 49 CFR, Part 40 with the U.S. Department of Transportation (DOT) would not assure that the device could accurately record the minimums reported. See PA 14-15.

57. Ryser knew that the Food and Drug Administration (FDA) regulates breath-alcohol testing systems pursuant to 21 CFR862.3050. Ryser knew that Draeger did not comply with said regulations. Consequently, Ryser knew that Draeger maintained a self- serving assurance plan. See PA 16-30.

58. Ryser was a high level executive who acted for Draeger during his testimony.

14

Consequently, under the common law of agency, Draeger will be responsible for this tortious conduct.

59. Draeger made the representations mentioned above with the intent and the purpose of deceiving the State of New Jersey and to induce the State of New Jersey into relying on the representations.

60. The State of New Jersey, in reliance on the representations mentioned above, was induced to contract with Draeger. The State of New Jersey's reliance on the representations mentioned above was reasonable under the circumstances, in that Draeger had a long history and professional credentials in the field of engineering.

61. The Plaintiffs and other Class members were foreseeable users or consumers, or were within the area exposed to the risk.

62. The fraud was the proximate cause of the harm to Plaintiffs and other Class members who faced prosecution with tainted evidence on a per se basis.

63. Solely as a consequence of Draeger's fraudulent conduct, the Plaintiffs have been damaged in the amount not yet determined, but which exceed the jurisdictional amount; and each member of the Class has been similarly damaged in amounts not yet determined, but which exceed the jurisdictional amount for each such member of the Class, exclusive of interest and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray the Court to enter judgment against Draeger and in favor of Plaintiffs, on behalf of themselves and the Class members, and to award the following relief:

15

A. Certifying this action as a New Jersey class action, certifying Plaintiffs as representative of the Class and designating their counsel as counsel for the Class;

B. Tolling the statute of limitations pursuant to the discovery rule and the doctrine of fraudulent concealment;

C. Awarding the Plaintiffs and each Class member compensatory damages for the acts complained of herein;

D. Awarding the Plaintiffs and each Class member costs and attorneys' fees as allowed by law, and/or awarding counsel for the Class attorneys' fees;

E. Awarding the plaintiffs and each class member statutory pre-judgment interest;

F.  An order declaring that the Alcotest is not a scientifically reliable instrument;

G. An order enjoining the use of the Alcotest to test suspected drunk drivers within the State of New Jersey.

H. An order requiring Draeger to disgorge or return all monies, revenues, and profits obtained by means of any wrongful act or practice.

I. For punitive damages.

J. For legal and equitable relief as to this Court may deem just and proper; and

K. Granting such other or further relief as may be appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury as to all issues so triable.

Dated: April 16, 2013                           THE LAW OFFICE OF ASHTON E. THOMAS

By:   /s/Ashton E. Thomas
1209 East Grand Street, Suite 2013
Elizabeth, New Jersey 07201
Tel: 908-289-3640
Fax: 908-353-8889


**CERTIFICATION**

I hereby certify that this matter in controversy is not the subject of any other court,

arbitration or administrative proceeding.

/s/ Ashton E. Thomas, Esq.

17