NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BOBBY JOHNSON and EDWIN AGUAIZA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DRAEGER SAFETY DIAGNOSTICS, INC.,<br><br>Defendants. | Civil Action No. 13-2439 (JLL)<br><br>OPINION |

**LINARES, District Judge.**

This matter comes before the Court by way of Defendant Draeger Safety Diagnostics, Inc.'s motion to dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendant's motion to dismiss is granted and Defendant's request for sanctions is denied. Count One of Plaintiffs' Second Amended Complaint is dismissed *with* prejudice. Counts Two and Three are dismissed *without* prejudice.

**BACKGROUND**[1]

The New Jersey Legislature has established that an individual may be found guilty of driving while intoxicated if he or she operates a motor vehicle with a blood alcohol concentration ("BAC") of .08% or more by weight of alcohol in his or her blood. N.J.S.A. 39:4-50(a). The

---
[1] The Court accepts the following facts asserted in Plaintiffs' Second Amended Complaint as true solely for purposes of this motion.

Alcotest 7110 is a breath-testing device manufactured and marketed by the Defendant, Draeger Safety Diagnostics Inc. ("Draeger"), which was first utilized in New Jersey to measure the content of alcohol in a person's blood by sampling that person's breath. (Second Am. Compl., ¶ 14).

In February 2010, Plaintiff Bobby Johnson, a New Jersey resident, was arrested for suspected drunk driving in the Township of Montclair. He was administered a breath test on the Alcotest 7110. (*Id.*, at ¶ 13). The Alcotest 7110 reported a reading of 0.13% BAC. (*Id.*). Plaintiff Johnson subsequently entered a plea to drunk driving; his driving privileges were suspended for 7 months and he was fined $664.00. (*Id.*).

In June 2011, Plaintiff Edwin Aguaiza, also a New Jersey resident, was arrested for suspected drunk driving in the City of Linden. (*Id.*, ¶ 14). He was administered a breath test on the Alotest 7110. (*Id.*). The Alcotest 7110 reported a reading of 0.11% BAC. Plaintiff Aguaiza subsequently entered a plea to drunk driving; his driving privileges were suspended for 7 months, and he was fined. (*Id.*).

Plaintiffs allege, generally, that the Alcotest 7110 contains latent design defects in that it is a piece of respiratory equipment that is not standardized at frequent intervals and there is no provision for calibration of its pulmonary reporting apparatus. (*Id.*, ¶ 11). In particular, Plaintiffs allege that:

> Draeger's failure to properly test the Alcotest prior to marketing them, their failure to take necessary steps to remedy the defect, their failure to suspend sales of the Alcotest in the United States, and their refusal to inspect, repair, or replace the defective parts, in light of their knowledge that this design damaged Plaintiffs and the Class, was and is willful, wanton, malicious, outrageous, and was and continues to be undertaken in deliberate disregard of, or with reckless indifference to, the rights and interests of Plaintiffs and the Class members.

(*Id*., ¶ 32).  According to Plaintiffs, this product defect, fraud and/or omissions by Draeger "were the proximate cause of the harm to Plaintiffs and other Class members who faced prosecution with tainted evidence . . . ." (*Id*., ¶¶ 39, 47, 65).

In light of the foregoing, Plaintiffs filed a Complaint in April 2013.  An Amended Complaint was filed on May 16, 2013.  A Second Amended Complaint was filed on May 24, 2013.  The Second Amended Complaint asserts the following three (3) claims: (1) negligence; (2) strict tort liability; and (3) common law fraud.  Plaintiffs seek to bring these claims as a statewide class action on behalf of themselves and all others similarly situated in the State of New Jersey.  The proposed Class is defined, in the alternative, as follows:

> (1) All persons arrested for drunk driving within the State of New Jersey who blew into the Alcotest 7110 where a result was reported and said result was used as part of the proofs of guilt and the plaintiffs plead guilty or were convicted after trial of drunk driving pursuant to N.J.S.A. 39:4-50.
> or
>
> (2) All persons arrested for drunk driving within the State of New Jersey who blew into the Alcotest 7110 where a result was reported which was under the minimums necessary for a reported result and the plaintiffs plead guilty or were convicted after trial of drunk driving pursuant to N.J.S.A. 39:4-50 or of refusal to submit to chemical test pursuant to N.J.S.A. 39:4-50.4a.

(Compl., ¶ 16).  This Court's subject matter jurisdiction over Plaintiffs' Second Amended Complaint is premised on 28 U.S.C. § 1332(d).[2]

On June 7, 2013, Defendant Draeger filed a motion to dismiss all three counts of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[2] Since this Court exercises its diversity jurisdiction over this action, the law to be applied is that of the forum state—New Jersey.  *See Am. Cyanamid Co. v. Fermenta Animal Health*, 54 F.3d 177, 180 (3d Cir.1995).  Plaintiffs do not dispute this.

## LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. *Id.*

## DISCUSSION

Defendant moves to dismiss Counts One (negligence), Two (strict tort liability), and Three (common law fraud) on the basis that Plaintiffs have failed to bring their claims under the New Jersey Products Liability Act ("PLA"), N.J.S.A. §§ 2A:58C–1 to 2A:58C–8, which is the exclusive remedy for alleged harm caused by a product.

As Defendant correctly notes, in New Jersey, any action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, is governed by the Product Liability Act ("PLA"), N.J.S.A. §§ 2A:58C–1 to 2A:58C–8. *See Sinclair v. Merck & Co., Inc.*, 195 N.J. 51, 65 (2008) ("[T]he Legislature expressly provided in the PLA that claims for 'harm caused by a product' are governed by the PLA 'irrespective of the theory underlying the claim.'"). Thus, with the exception of breach of express warranty claims, the PLA is the

exclusive remedy for "harm caused by a product" regardless "of the theory underlying the claim." *Id.; see also Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991) (holding that the PLA "effectively creates an exclusive statutory cause of action for claims falling within its purview.").

Under the PLA there are only three causes of action: (1) manufacturing defect, (2) failure to warn, or (3) design defect. *See* N.J.S.A. § 2A:58C–2. "[T]he PLA no longer recognizes negligence or breach of warranty (with the exception of an express warranty) as a viable separate claim for harm[,] [including personal injury,] caused by a defective product or an inadequate warning." *Koruba v. Am. Honda Motor Co., Inc.*, 396 N.J. Super. 517, 531 (App. Div. 2007) (internal quotations omitted; alteration in original). "Rather, the exclusive method to prosecute such a claim is under N.J.S.A. 2A:58C-2 by proving that the product was not reasonably fit, suitable or safe for its intended purpose because it either contained a manufacturing defect, failed to contain adequate warnings or instructions, or was designed in a defective manner." *Id.* (citing N.J.S.A. 2A:58C-2).

1.  **Count One – Negligence**

Plaintiffs concede that Count One of the Second Amended Complaint contains a common law negligence claim. In particular, Plaintiffs allege that: (a) "Draeger was negligent in that the Quality Assurance Plan that Draeger filed in 2001 pursuant to 49 CFR, Part 40 with the U.S. Department of Transportation (DOT) would not assure that the device could accurately record the minimums reported"; (b) "Draeger knew that the Food and Drug Administration (FDA) regulates breath-alcohol testing systems pursuant to 21 CFR 862.3050" and "knew that they had not complied with said regulations and that therefore they did not provide adequate quality

5

assurance"; (c) "The Plaintiffs and other Class members were foreseeable users or consumers, or were within the area exposed to the risk"; (d) "These omissions were the proximate cause of the harm to Plaintiffs and other Class members who faced prosecution with tainted evidence on a per se basis"; and (e) "Solely as a consequence of Draeger's negligent conduct, and its failure to exercise ordinary and reasonable care, the Plaintiffs have been damaged in the amount not yet determined." (Second Am. Compl., ¶¶ 36-40).

Plaintiffs cite generally to two cases for the proposition that "harm resulting from allegedly negligent conduct can give rise to negligence actions despite the presence of products and related harm as defined by the [PLA]." (Pl. Oppn' Br. at 4). In particular, Plaintiffs rely on: (1) *Ramos v. Silent Hoist and Crane Co.*, 256 N.J. Super. 467 (App. Div. 1992); and (2) *Potwora ex rel. Gray v. Grip,* 319 N.J. Super. 386 (App. Div. 1999). Plaintiffs cite to no particular section of either case, nor do Plaintiffs elaborate on *how* the foregoing cases support their legal argument. In any event, the Court has reviewed both cases and finds them both to be distinguishable.

In *Ramos*, the Appellate Division found that the plaintiff's cause of action sounded in negligence, and was not subsumed by the PLA, because: (a) the alleged harm was caused by an electrical control switch to the product—not the product itself, and (b) the defendant did not design, manufacture or sell the product at issue; rather, the defendant was a mere service provider who had designed and installed the electrical system to power the product. *See Ramos,* 256 N.J. Super. at 476-77 ("Foremost's design of the electrical system and its professional choice of where to place the controls . . . is not the same as a sale of a defectively designed component part of the assembled [product].").

In *Potwora,* the Appellate Division found that Plaintiff—who claimed to have been harmed by a motorcycle helmet—had failed to state a claim under the PLA against Royal, the original designer of the product, inasmuch as he was no longer in the helmet business at the time the alleged defect helmet was manufactured and sold. *See Potwora,* 319 N.J. Super. at 399 ("Under these circumstances, Royal did not place the helmet within the stream of commerce and it was not the manufacturer or seller of the helmet. Consequently, Royal may not be liable under the Act."). The Court also concluded that the plaintiff could not maintain a negligence action against Royal because "the harm plaintiff complain[ed] of was caused by a product, the helmet, and accordingly is covered by the Act." *Id*. at 401.

Here, the harm Plaintiffs complain of was caused by the Alcotest 7110 product, which was indisputably manufactured and sold by Defendant Draeger. To be clear, Plaintiffs allege that: (a) In 1995, "Draeger introduced to the United States market the Alcotest 7110, which used a dual sensor measuring system consisting of infrared spectroscopy (IR) and electrochemical technology," (b) "The Alcotest must report four minimums for a breath sample: minimum volume of 1.5 liters, minimum blowing time of 4.5 seconds, minimum flow rate of 2.5 liters, and the IR measurement reading achieves a plateau," (c) "Draeger was negligent in that the Quality Assurance Plan that Draeger filed in 2001 ... with the U.S. Department of Transportation (DOT) would not assure that the device could accurately record the minimums reported," (d) Draeger knew that the FDA regulates breath-alcohol testing systems, that they had not complied with said regulations, and, in doing so, failed to provide adequate quality assurance, and (e) "these omissions were the proximate cause of the harm to Plaintiffs and other Class members who faced prosecution with tainted evidence." (Second Am. Compl., ¶¶ 6, 34-40). Because the harm Plaintiffs complain of was allegedly caused by a product—the Alcotest 7110—the Court finds

7

that Plaintiffs' negligence claim against the product's manufacturer is subsumed by the PLA. *See Sinclair*, 195 N.J. at 65 ("[C]laims for 'harm caused by a product' are governed by the PLA 'irrespective of the theory underlying the claim.'").

Count One of Plaintiff's Second Amended Complaint, asserting a common law negligence claim, is hereby dismissed *with* prejudice. *See, e.g., Port Auth. of N.Y. & N.J. v. Arcadian Corp*., 189 F.3d 305, 313 (3d Cir. 1999) (dismissing negligence claim, stating that "[u]nder New Jersey law negligence is no longer viable as a separate claim for harm caused by a defective product"); *Repola*, 934 F.2d at 489–94 (dismissing claims of negligence and negligent failure to warn as subsumed by the PLA).

### 2. Count Two – Strict Tort Liability

Count Two contains a claim for "strict tort liability." It is based largely on the same factual allegations that form the basis of Count One. In particular, Count Two alleges that: the Alcotest was defectively designed in that there is no provision to calibrate the pulmonary function reported; the defect existed at the time the article left the control of the manufacturer and did not undergo substantial change; Alcotest did not safely perform the job or function for which it was made, contrary to the consumer's/user's reasonable expectations; Draeger was not reasonably careful in the manner in which it designed, marketed, and sold the Alcotest; Plaintiffs and other Class members were foreseeable users or consumers, or were within the area exposed to the risk; the defect was the proximate cause of the harm to Plaintiffs and other Class members who faced prosecution with tainted evidence; and, as a consequence of Draeger's negligent conduct, and its failure to exercise ordinary and reasonable care, the Plaintiffs have been

damaged in the amount not yet determined. (Second Am. Compl., ¶¶ 42-48). Defendant moves to dismiss Count Two on the basis that it is also subsumed within the PLA. (Def. Br. at 8-9).

As discussed above, "under the New Jersey Products Liability Act . . . the causes of action for negligence, strict liability, and implied warranty have been consolidated into a single product liability cause of action, the essence of which is strict liability." *Green v. Gen. Motors Corp.,* 310 N.J. Super. 507, 517 (App. Div. 1998). Plaintiffs do not expressly dispute that Count Two is subsumed by the PLA. *See* Pl. Opp'n Br. at 5. Rather, it appears from Plaintiffs' opposition brief[3] that it is their intent to pursue Count Two as a claim under the PLA. But Count Two of the Second Amended Complaint makes no reference, whatsoever, to the PLA. Nor does Count Two otherwise allege sufficient facts to sustain a design defect claim under the PLA.

For instance, "to establish a prima facie case of defect, the plaintiff must prove the availability of a technologically feasible and practical alternative design that would have reduced or prevented the plaintiffs' harm." *Cavanaugh v. Skil Corp.,* 164 N.J. 1 (2000) (internal quotations omitted); *see also Lewis v. Am. Cyanamid Co.*, 155 N.J. 544, 571 (1998) ("Plaintiffs who assert that the product could have been designed more safely must prove under a risk-utility analysis the existence of an alternative design that is both practical and feasible."). Count Two does not allege—much less with sufficient factual support—that a reasonable alternative design existed for the Alcotest 7110.

In addition, to state a claim under the PLA, Plaintiffs must allege that they suffered "harm" within the meaning of the Act. The PLA defines "harm" as "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain

---

[3] *See Com. of Pa. ex rel v. Zimmerman v. Pepsico*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph." N.J.S.A. § 2A:58C-1(b)(2). The New Jersey Supreme Court has construed the PLA's definition of "harm" to "require a physical injury." *See Sinclair*, 195 N.J. at 64 ("We read our PLA to require a physical injury."); *see also DeBenedetto v. Denny's, Inc.*, 421 N.J. Super. 312, 328 (Law Div. 2010) ("The PLA requires physical injury to sustain a claim"). Count Two of Plaintiffs' Second Amended Complaint fails to allege this type of harm. To the extent Plaintiffs' theory of harm under the PLA is that they faced "prosecution with tainted evidence,"[4] (a) Plaintiffs cite to no legal authority in support of this theory, (b) the Supreme Court of New Jersey has made clear that "harm" under the PLA requires a "physical injury,"[5] and (c) as a practical matter, whether or not Plaintiffs were "prosecuted with tainted evidence" in their respective state court criminal cases is not an issue that is properly before this Court in the context of this civil action.

In light of the foregoing, Plaintiffs have failed to state a claim for "strict tort liability" that is plausible *on its face*. *See Iqbal*, 556 U.S. at 678; *Green,* 310 N.J. Super. at 517. To the extent that Plaintiffs intended to bring this claim under the PLA *and* that the deficiencies

---

[4] To the extent Plaintiffs attempt to argue that they were harmed because they were "denied the option to make an informed and meaningful decision to plead or challenge the Alcotest results" (Pl. Opp'n Br. at 9), such allegation is not set forth in Plaintiffs' Second Amended Complaint and a complaint may not be amended by way of an opposition brief. *See Zimmerman*, 836 F.2d at 181 ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Even if such allegation *were* set forth in the operative complaint, as previously stated, the New Jersey Supreme Court has made clear that "harm" under the PLA requires a "physical injury." *See Sinclair*, 195 N.J. at 64 ("We read our PLA to require a physical injury."). Plaintiffs have failed to convince the Court that, notwithstanding the *Sinclair* decision, they have alleged a theory of harm under the PLA that is plausible on its face.

[5] *See Sinclair*, 195 N.J. at 64.

discussed above can be cured by way of amendment, Count Two of Plaintiffs' Second Amended Complaint is dismissed *without* prejudice.

### 3.     **Count Three – Fraud**

Count Three of Plaintiffs' Second Amended Complaint contains a claim of common law fraud. Plaintiffs allege that certain representations made by Hansueli Ryser, Vice President of Draeger, between October 2006 and December 2006 were false; that Mr. Ryser knew they were false; that Mr. Ryser made said representations with the intent of deceiving the State of New Jersey and to induce the State of New Jersey into relying on the representations; the State of New Jersey, in reliance on said representations, was induced to contract with Draeger; and that the foregoing "fraud" was the proximate cause of the harm to Plaintiffs and other Class members who faced prosecution with tainted evidence. (Second Am. Compl., ¶¶ 50-66).

To state a claim for fraud under New Jersey law, a plaintiff must establish: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. *See Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997). In addition, Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The purpose of the heightened pleading standards is to require the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot,* 507 F.3d 188, 200 (3d Cir. 2007); *see also Seville Indus. Mack Corp. v. Southmost Mack Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). "To satisfy this [heightened] standard, the

plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200. Plaintiff must also allege who made the purported misrepresentations and what specific misrepresentations were made. *See, e.g., Frederico v. Home Depot*, No. 05–5579, 2006 WL 624901, at *2 (D.N.J. March 10, 2006).

Plaintiffs' common law fraud claim fails for a number of reasons, including but not limited to the following:  First, Plaintiffs fail to allege any facts to support the allegation that Mr. Ryser, acting on behalf of Draeger, knew that the statements he made during a 2006 hearing were false.  Plaintiffs' conclusory allegation that Mr. Ryser "knew that the representations about quality were false" is insufficient to meet the Rule 8(a) pleading standard. *See generally Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").[6]  Stated differently, Plaintiffs have failed to plead sufficient facts in support of this statement that would allow this Court to draw the reasonable

---

[6] The Supreme Court, in *Iqbal*, made clear that:

> It is true that Rule 9(b) requires particularity when pleading "fraud or mistake," while allowing "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally." But "generally" is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8. And Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label "general allegation," and expect his complaint to survive a motion to dismiss.

*Iqbal*, 129 S.Ct. at 1954; *see generally In re Suprema Specialties, Inc. Sec. Litig*., 438 F.3d 256, 282 (3d Cir. 2006) ("[P]leading of scienter sufficient to satisfy Rule 9(b) 'may not rest on a bare inference that a defendant "must have had" knowledge of the facts' or 'must have known' of the fraud given his or her position in the company.").

inference that Mr. Ryser, acting on behalf of Draeger, possessed such knowledge. *See e.g., United States, ex rel. PileckiSimko v. Chubb Inst.,* 443 Fed. Appx. 754, 760–761 (3d Cir. 2011) (finding insufficient facts to support element of knowledge where the complaint alleged, generally, that "Chubb . . . knowingly uses . . . false records or statements . . . ."); *see generally In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256,282 (3d Cir. 2006) ("A pleading of scienter sufficient to satisfy Rule 9(b) 'may not rest on a bare inference that a defendant "must have had" knowledge of the facts' or 'must have known' of the fraud given his or her position in the company.").

Next, Plaintiffs fail to allege any specific communications between themselves and Mr. Ryser. Nor does Count Three allege that Plaintiffs were even aware that Mr. Ryser had made such statements, let alone that they relied upon such statements. "The actual receipt and consideration of any misstatement remains central to the case of any plaintiff seeking to prove that he or she was deceived by the misstatement or omission. The element of reliance is the same for fraud and negligent misrepresentation." *Kaufman v. i-Stat Corp.*, 165 N.J. 94, 109 (2000).[7] Thus, Plaintiffs have failed to plead a theory of reasonable reliance that is plausible on its face. *See Gennari*, 148 N.J. at 610 ("The five elements of common-law fraud are: (1) a

---

[7] To the extent Plaintiffs rely on *Landy v. Fed. Deposit Ins. Corp.,* 486 F.2d 139, 169 (3d Cir. 1973), for the proposition that "the common law extends a defendant's liability for fraud to all those persons who he should have reasonably foreseen would be injured by his misrepresentation," the Court not only finds the facts and claims at issue in the *Landy* case—a shareholder derivative action brought pursuant to the Securities Exchange Act of 1934, § 10(b)— to be materially distinguishable, but also, the Third Circuit went on to explain "[a]lthough common law precepts are important guideposts in defining liability under the federal securities laws, they are not determinative." Here, the parties do not dispute that New Jersey law applies to Plaintiffs' claim of fraud. Because "[t]he actual receipt and consideration of any misstatement remains central to the case of any plaintiff seeking to prove that he or she was deceived by the misstatement or omission" under New Jersey law, Plaintiffs' reliance on *Landy* for the implicit proposition that the element of reliance is *not* required to state a claim of fraud under New Jersey law is therefore rejected. *See generally Kaufman,* 165 N.J. at 109; *Gennari*, 148 N.J. at 610.

material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.").

Finally, to the extent Plaintiffs' common law fraud claim is based upon statements allegedly made by Defendant Draeger to the FDA, such claim would be preempted by federal law. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001) (holding that the plaintiffs' state-law fraud-on-the-FDA claims conflict with, and are therefore impliedly pre-empted by, federal law" and noting that "[p]olicing fraud against federal agencies is hardly "a field which the States have traditionally occupied") (citations omitted).

In light of the foregoing, Plaintiffs have failed to state a claim of common law fraud that is plausible on its face. Defendant's motion to dismiss this claim is granted. To the extent the deficiencies in this claim can be cured by way of amendment, Count Three of Plaintiffs' Second Amended Complaint is dismissed *without* prejudice.

**4.     Sanctions**

In addition to seeking dismissal of all claims set forth in the Second Amended Complaint, Defendant Draeger seeks sanctions pursuant to 28 U.S.C. § 1927. In support of this request, Defendant argues, generally, that "[f]rom the filing of the original Complaint, it was patently obvious that Plaintiffs were advancing causes of action that had no basis in current New Jersey law and are clearly barred by the application of the PLA." (Def. Br. at 10).

Title 28, Section 1927 of the U.S. Code provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the

court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The power to impose sanctions "is a matter entrusted to the discretion of the district court." *Hackman v. Valley Fair,* 932 F.2d 239, 242 (3d Cir. 1991). The imposition of sanctions under Section 1927 requires a finding that "an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the costs of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Prudential Ins. Co. of Am.*, 278 F.3d 175, 188 (3d Cir. 2002) (citation omitted). Indicia of bad faith include "findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *Id.* at 188 (citation omitted). To impose attorneys' fees, "a finding of willful bad faith on the part of the offending lawyer is a prerequisite." *Hackman*, 932 F.2d at 242.

   Having carefully considered the parties' arguments on the issue of sanctions, the Court does not find that Plaintiffs' alleged misconduct rises to the level of bad faith. Additionally, the Court is not satisfied that Plaintiffs' counsel multiplied the proceedings here in an unreasonable and vexatious manner. 28 U.S.C. § 1927. Accordingly, the Court declines to exercise its discretion to issue sanctions against Plaintiffs at this time. Defendant's request for sanctions pursuant to 28 U.S.C. § 1927 is denied *without* prejudice.

**CONCLUSION**

Based on the reasons set forth above, Defendant's motion to dismiss Plaintiffs' Second Amended Complaint is granted. Count One (negligence) is dismissed *with* prejudice. Counts Two (strict product liability) and Three (fraud) are dismissed *without* prejudice.[8] To the extent the pleading deficiencies in Counts Two and/or Three can be cured by way of amendment, the Court will grant Plaintiffs one **final** opportunity to cure the pleading deficiencies in these two claims by filing a Third Amended Complaint **on or before August 23, 2013**. Plaintiffs' failure to do so will result in dismissal of Count Two and Three of Plaintiff's Second Amended Complaint *with* prejudice. Defendant's request for sanctions is denied *without* prejudice.

An appropriate Order accompanies this Opinion.

                                              s/ Jose L. Linares
                                              Jose L. Linares
Date: July 19, 2013                      United States District Judge

---

[8] Having dismissed all claims asserted in Plaintiffs' Second Amended Complaint, the Court declines to address Defendant's request to strike Plaintiffs' request for punitive damages. In the interest of judicial economy, the Court does note, however, that the Second Amended Complaint seeks an award of punitive damages under the PLA. In particular, Plaintiffs allege "[t]he New Jersey Legislature sanctions manufacturers who violation [sic] FDA regulations. N.J.S.A. 2A:58C-5 states, 'however, where the product manufacturer knowingly withheld or misrepresented information required to be submitted under the agency's regulations, which information was material and relevant to the harm in question, punitive damages may be award [sic]." (Second Am. Compl., ¶ 63). To the extent Plaintiffs choose to file a Third Amended Complaint and intend to pursue an award of punitive damages in this case under the PLA, Plaintiffs are hereby directed to review and consider this Court's recent decision in the matter of *Nelson v. Biogen Idec Inc.*, No. 12–7317, 2013 WL 1700918, at *3 (D.N.J. April 19, 2013) (concluding that the PLA precluded an award of punitive damages in that case and noting that "[w]hile the PLA does provide for one exception to the general rule 'where the product manufacturer knowingly withheld or misrepresented information required to be submitted under the agency's regulations, which information was material and relevant to the harm in question,' N.J.S.A. § 2A:58C–5c, the New Jersey Appellate Division subsequently held that the foregoing exception is preempted by federal law because it requires, among other things, a showing of fraud on the FDA.") (citing *McDarby v. Merck & Co., Inc.*, 401 N.J. Super. 10, 93–94 (App. Div. 2008) and *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001)).