NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BOBBY JOHNSON and EDWIN AGUAIZA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DRAEGER SAFETY DIAGNOSTICS, INC.,<br><br>Defendants. | Civil Action No. 13-2439 (JLL)<br><br>OPINION |

**LINARES, District Judge.**

This matter comes before the Court by way of Defendant Draeger Safety Diagnostics, Inc.'s motion to dismiss Plaintiffs' Third Amended Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and to impose sanctions pursuant to 28 U.S.C. § 1927. The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendant's motion to dismiss is granted and Defendant's request for sanctions is denied. Plaintiffs' Third Amended Complaint is dismissed in its entirety for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.

**BACKGROUND**[1]

The New Jersey Legislature has established that an individual may be found guilty of driving while intoxicated if he or she operates a motor vehicle with a blood alcohol concentration ("BAC") of .08% or more by weight of alcohol in his or her blood. N.J.S.A. 39:4-50(a).

---

[1] The Court accepts the following facts asserted in Plaintiffs' Third Amended Complaint as true solely for purposes of this motion.

1

Defendant Draeger Safety Diagnostics, Inc. ("Defendant" or "Draeger") is in the business of designing, manufacturing, marketing, selling, and distributing the Alcotest 7110 MKII-C ("Alcotest 7110"), a pulmonary device that tests breath samples for alcohol concentration. (Third Am. Compl., ¶¶ 30-33). In 2001, the State of New Jersey initially reviewed and evaluated the Alcotest 7110 in a one-year pilot program limited to one township in the state. (*Id.* at ¶ 8). By 2006, the Alcotest 7110 device was being used by police departments in seventeen of New Jersey's twenty-one counties. (*Id.* at ¶ 9-10).

In February 2010, Plaintiff Bobby Johnson ("Johnson"), a New Jersey resident, was arrested for suspected drunk driving in the Township of Montclair. (*Id.* at ¶ 12). Johnson consented to, and was administered, a breath test using the Alcotest 7110 which reported a reading of 0.13% BAC. (*Id.*). Plaintiff Johnson subsequently entered a plea to drunk driving; his driving privileges were suspended for 7 months and he was fined $664.00. (*Id.*).

In June 2011, Plaintiff Edwin Aguaiza ("Aguaiza"), also a New Jersey resident, was arrested for suspected drunk driving in the City of Linden. (*Id.* at ¶ 13). Aguaiza consented to, and was administered, a breath test on the Alcotest 7110 which reported a reading of 0.11% BAC. (*Id.*). Plaintiff Aguaiza subsequently entered a plea to drunk driving; his driving privileges were suspended for 7 months, and he was fined. (*Id.*).

Plaintiffs allege, generally, that Draeger violated the New Jersey Product Liability Act ("PLA") when it designed, marketed, and sold the Alcotest 7110. (*Id.* at ¶ 32). In particular, Plaintiffs allege that Draeger is responsible for certain design defects in the Alcotest 7110, has engaged in an ongoing scheme to hide the defective nature of the device, and, despite this knowledge and awareness, has failed to take the appropriate action towards repairing or replacing the defective design. (*Id.*). The crux of Plaintiff's design defect claim is that the

Alcotest 7110 is intended to measure expiration volume and blow duration as part of its normal function, but that it lacks a provision to assure that these measurements are accurate or a provision to regularly verify calibration of these measurements. (*Id.*).

Plaintiffs also allege that Draeger committed fraud by way of statements made by the company's Vice President, Hansueli Ryser ("Ryser"). (*Id.*, ¶ 70). For instance, Plaintiffs claim that Ryser made material misrepresentations that he knew were false when he gave testimony under oath before the Honorable Michael P. King—specifically, testimony indicating that the Alcotest 7110 accurately performs its task of detecting alcohol concentration and that it requires no additional maintenance following initial calibration. (*Id.*, ¶ 65-69).

According to the Third Amended Complaint, the product's defective design and the fraud committed by Draeger were the proximate cause of physical harm allegedly suffered by the Plaintiffs including: physical illness, pain and suffering, mental anguish, and emotional harm. (*Id.* at ¶¶ 77, 86).

In light of the foregoing, Plaintiffs filed a Complaint in April 2013. An Amended Complaint was filed on May 16, 2013. A Second Amended Complaint was filed on May 24, 2013. A Third Amended Complaint was filed on August 21, 2013. The Third Amended Complaint asserts the following two (2) claims: (1) design defect – in violation of the New Jersey Product Liability Act; and (2) common law fraud. Plaintiffs seek to bring these claims as a statewide class action on behalf of themselves and all others similarly situated in the State of New Jersey. (*Id.*, ¶ 15). The proposed Class is defined, in the alternative, as follows:

> (1) All persons arrested for drunk driving within the State of New Jersey who blew into the Alcotest 7110 where a result was reported and said result was used as part of the proofs of guilt and the plaintiffs plead guilty or were convicted after trial of drunk driving pursuant to N.J.S.A. 39:4-50.

> or
>
> (2) All persons arrested for drunk driving within the State of New Jersey who blew into the Alcotest 7110 where a result was reported which was under the minimums necessary for a reported result and the plaintiffs plead guilty or were convicted after trial of drunk driving pursuant to N.J.S.A. 39:4-50 and/or of refusal to submit to chemical test pursuant to N.J.S.A. 39:4-50.4a.

(*Id.* at ¶ 15). This Court's subject matter jurisdiction over Plaintiffs' Third Amended Complaint is premised on 28 U.S.C. § 1332(d).[2]

On September 4, 2013, Defendant Draeger filed a motion to dismiss both counts of the Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **LEGAL STANDARD**

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231-33 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. *Id.*

---

[2] Since this Court exercises its diversity jurisdiction over this action, the law to be applied is that of the forum state—New Jersey. *See Am. Cyanamid Co. v. Fermenta Animal Health*, 54 F.3d 177, 180 (3d Cir.1995).

4

**DISCUSSION**

Defendant moves to dismiss Count One (design defect pursuant to the PLA) and Count Two (common law fraud) on two grounds: (1) Plaintiffs' Third Amended Complaint is barred by the *Rooker-Feldman* doctrine, and (2) Plaintiffs have, once again, failed to allege a facially plausible claim of design defect (under the PLA) or common law fraud.

1.  **Rooker-Feldman Doctrine**

Plaintiffs concede that Defendant designed and manufactured the Alcotest 7110 for the purpose of testing breath samples to determine blood alcohol concentration. (Third Am. Compl., ¶¶ 30-33). For that particular purpose, in 2008, the Supreme Court of the State of New Jersey held that the Alcotest is "generally scientifically reliable," and with certain modifications, its results are admissible to support a *per se* violation of N.J.S.A. 39:4-50. *See State v. Chun,* 194 N.J. 54, 65 (2008) ("[W]e conclude that the Alcotest, utilizing New Jersey Firmware version 3.11, is generally scientifically reliable, but that certain modifications are required in order to permit its results to be admissible or to allow it to be utilized to prove a per se violation of the statute."). On September 18, 2013, the New Jersey Supreme Court "concluded that the Alcotest 7110, utilizing Firmware version 3.11, remains scientifically reliable, and generates results that are admissible to prove a per se violation of the statutory prohibitions on driving while under the influence of alcohol . . . ." *State v. Chun*, 215 N.J. 489 (2013). The Court begins its analysis by noting that it is within this framework, established by the New Jersey Supreme Court in *Chun,* that both of the named Plaintiffs in this federal action were prosecuted and ultimately convicted in the context of their state court criminal actions. *See* Third Am. Compl., ¶ 12 ("For Plaintiff Johnson, the Alcotest 7110 reported a reading of 0.13% BAC. Because this evidence was

admitted on a per se basis, Plaintiff Johnson entered a plea to drunk driving."); ¶ 13 ("For Plaintiff Aguaiza, the Alcotest 7110 reported a reading of 0.11% BAC. Because this evidence was admitted on a per se basis, Plaintiff Aguaiza entered a plea to drunk driving."); *see, e.g., State v. Johnson*, 2011 WL 2410039, at *2 (N.J. Super. App. Div. May 12, 2011) ("The Alcotest has been held to be 'generally scientifically reliable,' and with certain modifications, its results admissible to support a per se violation of N.J.S.A. 39:4–50.") (citing *Chun*, 194 N.J. at 65).

Generally speaking, a claim is "barred by *Rooker-Feldman* under two circumstances: first, if the claim was 'actually litigated' in state court prior to the filing of the federal action or, second, if the claim is 'inextricably intertwined with [the] state adjudication,' meaning that 'federal relief can only be predicated upon a conviction that the state court was wrong.' " *Desi's Pizza, Inc. v. City of Wilkes-Barre,* 321 F.3d 411, 419 (3d Cir. 2003) (quotations omitted). The Third Circuit has since clarified that "there are four requirements that must be met for the *Rooker–Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005)). There is no dispute here that the federal Plaintiffs lost in state court or that their state court criminal convictions were rendered before this federal suit was filed. Thus, the second and fourth requirements are the key to determining whether this federal suit presents an independent, non-barred claim.

Because *Rooker-Feldman* is not a bar to federal jurisdiction when a federal plaintiff asserts an injury caused by the defendant's actions, "the critical task is thus to identify those

federal suits that profess to complain of injury by a third party, but actually complain of injury 'produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.' " *Great Western*, 615 F.3d at 167 (quotation omitted). Although the Third Amended Complaint professes to complain of injuries caused by Defendant Draeger, based on the reasons that follow, the Court finds that the true injury complained of in both Counts One and Two was produced by the legal framework in existence at the time—which was established by the *Chun* decision.

For example, as to Count One, Paragraph 55 of the Third Amended Complaint alleges that:

> The erroneous results reported by the Alcotest 7110 forced a choice for Plaintiff Johnson. If he were convicted while employed, he could have been terminated for cause without benefits. If he retired early, he would have a reduced income for the rest of his life. As a result of the above mentioned life changing choices, Plaintiff Johnson suffered frequent headaches, daily stomach pain, and mental stress. Plaintiff Johnson was unable to sleep for weeks. Plaintiff Johnson's health continues to be poor as a result of this emotional trauma.

(Third Am. Compl., ¶ 55). The alleged erroneous results reported by the Alcotest, without more, did not cause the injury that Plaintiffs now complain of—i.e., their "life changing" choice to plead guilty to drunk driving, which, in turn, allegedly led to headaches, stomach pains and mental stress. Rather, based on the allegations set forth in the Third Amended Complaint, it was the decision by the New Jersey Supreme Court in *Chun*—concluding that the Alcotest was, at that point in time, "scientifically reliable" and that it generated results that were admissible to prove a per se violation of N.J.S.A. 39:4–50—that produced Plaintiffs' "life changing" dilemma. *See* Third Am. Compl., ¶ 12 ("For Plaintiff Johnson, the Alcotest 7110 reported a reading of 0.13% BAC. Because this evidence was admitted on a per se basis, Plaintiff Johnson entered a

plea to drunk driving."); ¶ 13 ("For Plaintiff Aguaiza, the Alcotest 7110 reported a reading of 0.11% BAC.  Because this evidence was admitted on a per se basis, Plaintiff Aguaiza entered a plea to drunk driving.").

There is no question that the injury complained of in Count Two was caused by the state court judgments upon which Plaintiffs' criminal convictions were based.   In particular, Count Two alleges that Defendant committed common law fraud when its Vice President, Mr. Ryser, testified under oath in 2006—before the Honorable Michael P. King, presiding over the *Chun* fact finding hearing—that the Alcotest 7110 was a scientifically reliable device. (Third Am. Compl., ¶ 61-65).  Notably, Plaintiffs go on to allege that the "New Jersey Supreme Court relied on Mr. Ryser when it adopted the findings of Judge King and concluded that the Alcotest is generally scientifically reliable." (*Id*., ¶ 72) (citing to the *Chun* decision).  Plaintiffs do not allege that they ever communicated directly with Mr. Ryser or that they were even aware of Mr. Ryser's allegedly false testimony at the time of their arrest.  Most critically, Plaintiffs fail to allege facts suggesting that they were aware of Mr. Ryser's allegedly false testimony at the point in time when they were forced to make their "life changing choices" of whether or not to plead guilty.  Rather, based on the facts alleged in the Third Amended Complaint, there is no question that Plaintiffs were only "injured" to the extent that the New Jersey Supreme Court in *Chun* relied upon Mr. Ryser's allegedly false testimony.  In light of the foregoing, the Court concludes that the injury Plaintiffs complain of in this federal action was caused by the state court judgments upon which their criminal convictions were based. *See Great Western,* 615 F.3d at 166.

The Court also finds that the last factor set forth by the Third Circuit in *Great Western* is met—namely, that Plaintiffs are inviting this Court to review and reject the foregoing state court

judgments. *Id.* at 168. In the context of this federal action, Plaintiffs ask this Court to determine, *inter alia:* (a) whether the Alcotest 7110 contains a design defect under the PLA (in Count One), and (b) whether Vice President of Defendant Draeger falsely testified that the Alcotest was a scientifically reliable device in the context of the *Chun* case (in Count Two). (Third Am. Compl., ¶ 19(1)). In particular, Count One (design defect under the PLA) alleges that Defendant violated the PLA "when it designed, marketed, and sold the Alcotest 7110 in that the Alcotest 7110 is intended to measure volume and blow duration as part of its normal function, but lacks a provision to assure that these measurements are accurate or to regularly verify calibration of these measurements." (*Id.*, ¶ 32). Count Two (common law fraud) alleges that Vice President of Defendant Draeger *knew* the Alcotest 7110 was not scientifically reliable, despite testifying to the contrary before the Honorable Michael P. King, who presided over the fact finding hearing in the *Chun* action.

But, as stated above, the New Jersey Supreme Court has already concluded that the Alcotest was—and *remains*—"scientifically reliable" for the purpose for which it was designed—to test breath samples to determine blood alcohol concentration. *See Chun,* 194 N.J. at 65; *Chun*, 215 N.J. at 489. Thus, a finding by this Court that the Alcotest contains a defect for the purpose for which it was designed would effectively prevent the enforcement of the state court's orders upon which Plaintiffs' criminal convictions were based. "*Rooker-Feldman* does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders." *Desi's Pizza*, 321 F.3d at 422. Certainly, a determination, in this federal action, that Draeger's Vice President lied under oath before the *Chun* Court would be inextricably intertwined with and could render ineffectual the state court orders upon which Plaintiffs' criminal convictions were based—including but not limited to the *Chun* decision itself.

9

In short, the Court concludes that Plaintiffs' Third Amended Complaint—which seeks a determination that the Alcotest 7110 contains a design defect under the PLA and that Vice President of Defendant Draeger knew about said design defect when he testified that the Alcotest was scientifically reliable in the context of the *Chun* case—improperly invites this Court to review and reject the state court judgments upon which Plaintiffs' criminal convictions were based—including but not limited to the *Chun* decision. A determination that the Alcotest 7110 contains a design defect and/or that its manufacturer testified falsely under oath in the context of the *Chun* matter would effectively require a finding that the *Chun* case was erroneously decided by the New Jersey Supreme Court, as were Plaintiffs' criminal cases, which were indisputably based on the *Chun* holding. This is precisely what the Court is prohibited from doing under the *Rooker–Feldman* doctrine. *See Great Western*, 615 F.3d at 166 (prohibiting actions where "the plaintiff is inviting the district court to review and reject the state judgments").

As a result, the *Rooker–Feldman* doctrine prevents this Court from exercising subject matter jurisdiction over Plaintiffs' Third Amended Complaint. *See generally ITT Corp. v. Intelnet Int'l*, 366 F.3d 205, 211 (3d Cir. 2004) ("If the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit.") (citations omitted). Plaintiffs' Third Amended Complaint is therefore dismissed for lack of subject matter jurisdiction. Plaintiffs' remedy, if any, lies in the state courts—not federal court. *See, e.g., Singleton v. Collins,* 513 Fed. Appx. 251, 253 (3d Cir. 2013).

**2.    Sanctions**

In addition to seeking dismissal of all claims set forth in the Third Amended Complaint, Defendant Draeger seeks sanctions pursuant to 28 U.S.C. § 1927. Title 28, Section 1927 of the U.S. Code provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The power to impose sanctions "is a matter entrusted to the discretion of the district court." *Hackman v. Valley Fair*, 932 F.2d 239, 242 (3d Cir. 1991). The imposition of sanctions under Section 1927 requires a finding that "an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the costs of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Prudential Ins. Co. of Am.*, 278 F.3d 175, 188 (3d Cir. 2002) (citation omitted). Indicia of bad faith include "findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *Id.* at 188 (citation omitted). To impose attorneys' fees, "a finding of willful bad faith on the part of the offending lawyer is a prerequisite." *Hackman*, 932 F.2d at 242.

Although the Court concludes that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine, the Court does not find that Plaintiffs' actions in commencing the instant cause of action necessarily rise to the level of bad faith. Additionally, the Court is not satisfied that Plaintiffs' counsel multiplied the proceedings here in an unreasonable and vexatious manner. 28 U.S.C. § 1927. Accordingly, the Court declines to exercise its discretion to issue sanctions against Plaintiffs at this time. Defendant's request for sanctions pursuant to 28 U.S.C. § 1927 is denied.

## **CONCLUSION**

Based on the reasons set forth above, Defendant's motion to dismiss is granted and Defendant's request for sanctions is denied. Plaintiffs' Third Amended Complaint is dismissed in its entirety for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. An appropriate Order accompanies this Opinion.

                                                       s/ Jose Linares
                                                       Jose L. Linares

Date:   October 28, 2013                                  United States District Judge